IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-00145-01-CR-W-BP |
| | ) | |
| BOBBY R. DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER AND OPINION (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND (2) DENYING DEFENDANT'S MOTION TO SUPPRESS</u>**

Defendant Bobby Davis has been charged in a Superseding Indictment with being a felon in possession of two firearms. He filed a Motion to Suppress, (Doc. 26), contending that evidence and statements should be suppressed. The Honorable Lajuana M. Counts, United States Magistrate Judge for this District, held a hearing on April 11, 2019, and she issued a Report recommending that the Motion to Suppress be denied. (Doc. 52.) Defendant objects to Judge Counts's Report and Recommendation ("the Report").

The Court has conducted a de novo review as required by 28 U.S.C. § 636(b)(1). In particular, the Court has reviewed the parties' submissions before the hearing, the transcript from the hearing, the exhibits admitted during the hearing, Defendant's objections and the parties' briefing on those objections. Having conducted this review, the Court adopts the Report as the Order of the Court and denies the Motion to Suppress; the Court's discussion is intended to augment, not supplant, the Report's recommended findings and conclusions.

**I. BACKGROUND**

At approximately midnight on May 8, 2018, Officer Blayne Newton of the Kansas City (Missouri) Police Department, ("KCPD") was patrolling as a one-person crew when he saw a silver

Pontiac that appeared similar to one that had run from him the night before. Officer Newton attempted to initiate a traffic stop, but the Pontiac fled at a high rate of speed. Officer Newton stopped the pursuit due to the risk involved in a high-speed chase on a minor charge. He was not able to see the occupant(s) in order to get a description.

Detective Jarrel Berryman (then a patrol officer with KCPD) was on patrol with his partner, (Officer Wasner), and he saw a Pontiac that matched the description of the one that dispatch reported had fled from Officer Newton. Detective Berryman and Officer Wasner began following the Pontiac; at some point, the Pontiac accelerated and began running through stop signs. Detective Berryman saw the Pontiac spin out and come to a stop near 45th Street and Montgall; at that point, Detective Berryman and Officer Wasner were twenty to thirty yards from the Pontiac. Detective Berryman reported that he saw a "black male, looks like a black shirt, black shorts" exit the Pontiac, but in making this report he stated that the suspect ran north on Wabash, not Montgall. Detective Berryman's observation and radioed report occurred sometime between 12:12:54 and 12:13:00. Detective Berryman and Officer Wasner approached the Pontiac and, at 12:13:15, drove past it to look for the person who ran.

Officers (including Officer Newton) set up a perimeter. Based on his testimony, (Tr. at 50) and his dashcam video, Officer Newton turned north on Wabash at 42nd Street at approximately 12:15:54. As he approached the intersection at 41st and Wabash he passed a black male with short hair wearing black shorts and a black shirt, walking north; this person proved to be the Defendant. When Officer Netwon passed, Defendant quickened his pace and changed direction to go south of and behind the house at the corner of 41st and Wabash. Given the reported direction the Pontiac's driver ran, the proximity of 41st and Wabash to 45th and Montgall, Defendant's apparent efforts to avoid him, and the fact that Defendant matched the description communicated by Detective

2

Berryman, Officer Newton exited his car (at approximately 12:16:17) and went to the back of the house from the other side. Defendant went into an alleyway that led to the back of a building on 41st and Prospect. Officer Newton ordered Defendant to get on the ground and observed that Defendant had a small black object in his hand that he believed to be a firearm. Defendant turned his body and put the object behind a piece of plywood that was leaning against the building.

Defendant's shorts were black with a green stripe up the sides and at the bottom. At 12:17:11, Officer Newton radioed Detective Berryman to ask if the Pontiac's driver was wearing shorts with a green stripe. Detective Berryman could not confirm or deny whether the person he saw was wearing shorts with a green stripe.

At approximately 12:18:04, Detective Berryman and Officer Wasner returned to the Pontiac. This time, they observed a pair of sandals in the street; Detective Berryman reported that the "guy has no shoes on." Detective Berryman and Officer Wasner got out of their car and inspected the Pontiac; at approximately 12:19:03 Officer Wasner stated that he observed an "ID that fell out of the car over here" and Detective Berryman indicated that he saw it too. Neither Detective Berryman nor Officer Wasner looked at the identification.

Meanwhile, Officer Newton had placed Defendant in handcuffs and at 12:18:49 advised him that he was not under arrest. At some point Officer Newton was joined by Officer Garza in the alley (or at least, somewhere outside the dashcam's view). They walked Defendant to Officer Newton's car, reappearing in the dashcam's view at approximately 12:19:53 and arriving at the car at 12:20:03. At 12:20:37, Officer Newton left Defendant with Officer Garza to see what Defendant had put behind the plywood. While he was out of view of the dashcam his microphone was still providing audio; at 12:21:48 he reported that he found a gun behind the plywood.

Meanwhile, at 12:22:35, Officer Garza moved Defendant to the sidewalk, out of view of the dashcam. Officer Garza was also out of view of the dashcam starting at 12:23:25. At approximately 12:26:10, Officer Newton's dashcam recorded a report radioed from dispatch that there were outstanding warrants for Defendant's arrest.

At some point Officer Newton left the alleyway and joined a Sergeant at the Sergeant's car out of the dashcam's view and had a discussion with him. Officer Newton announced that he was going to get a camera to take pictures and returned in view of his dashcam at approximately 12:29:36. As he approached, at 12:29:41 he told Officer Garza that Defendant "ditched a gun back there." Defendant protested and, in the course of doing so at approximately 12:29:53 stated that he was a felon.

Defendant was later taken to the police station where he was interviewed by Detective Troy Schwalm. Detective Schwalm advised Defendant of his *Miranda* rights both orally and in writing. During the interview, Defendant denied possessing the gun Officer Newton found in the alley – but he admitted that he had a firearm in his residence. Detective Shwalm then obtained a search warrant for Defendant's house; during the search officers found a shotgun in a bedroom closet.

The alleyway that Officer Newton followed Defendant into is accessible to the public; it is not fenced off, there is no gate, and there is nothing preventing anyone from walking into it. There are no signs indicating that it is private property. The alleyway leads to the back of a building; there was a door, above which was as sign stating "Reality Records." The gun was found behind a piece of plywood leaning against the wall next to that door.

## I. DISCUSSION

Defendant challenges the constitutionality of his detention arguing that it was really an arrest for which probable cause was lacking. Alternatively, he argues that even if it was an

4

investigatory stop, reasonable suspicion was either absent at its inception or dissipated before officers learned that he was a felon. Second, he argues that Officer Newton needed a warrant to enter the alleyway when he went to see what Defendant hid behind the plywood. Finally, he contends that the search warrant application prepared by Detective Schwalm was misleading. As discussed more fully below, the Court adopts the Report's recommendation that these arguments should be rejected. In the course of this discussion, additional facts will be discussed. And, as with the Report's recommended factual findings, the Court adopts the Report's legal analysis; the following discussion is a supplement to the Report's reasoning.

### A. Constitutionality of the Stop

First, the Court agrees that Officer Newton's initial stop was an investigatory stop and not an arrest, so probable cause was not required. Defendant contends that he was arrested because he was not free to leave and was handcuffed. But, as the Report points out, these facts do not automatically transform a stop into an arrest. *E.g., United States v. Hensley,* 469 U.S. 221, 235 (1985); *United States v. Morgan,* 729 F.3d 1086, 1091 (8th Cir. 2013); *United States v. Walker,* 555 F.3d 716, 721 (8th Cir. 2009). Even in the case of an investigatory stop, an officer can use handcuffs when necessary to protect his or her safety or to maintain the status quo. *E.g., Morgan,* 729 F.3d at 1091; *United States v. Martinez,* 462 F.3d 903, 907 (8th Cir. 2006). And here, Officer Newton was justified in using handcuffs given that he was alone in a high-crime area attempting to stop a person he believed had a gun. Thus, the Court agrees with the Report that Defendant was initially stopped, not arrested.

An investigatory stop is justified when an officer observes or knows specific, articulable facts that give rise to a reasonable suspicion that criminal activity is occurring. *E.g., United States v. Sokolow,* 490 U.S. 1, 7 (1989). Reasonable suspicion is a less demanding standard than probable

5

cause; it requires more than an "inchoate and unparticularized suspicion or hunch," *United States v. Carpenter,* 462 F.3d 981, 986 (8th Cir. 2006) (quoting *Sokolow,* 490 U.S. at 7), but the degree of suspicion required is minimal. *E.g., United States v. Donnelly,* 475 F.3d 946, 952 (8th Cir. 2007). In making that assessment, the officer can draw on his experiences and training to draw inferences, the facts must be considered cumulatively, and "[i]nnocent actions can give rise to reasonable suspicion when considered as part of the totality of the circumstances." *United States v. Davison,* 808 F.3d 325, 329 (8th Cir. 2015). Here, the Court concludes that Officer Newton had reasonable suspicion to stop Defendant: he was near where the Pontiac spun out, he matched the description, and he appeared to be avoiding Officer Newton by abruptly changing his direction and quickening his pace to go behind the house at 41st and Wabash.

Defendant argues that even if there was reasonable suspicion for the initial stop, that suspicion dissipated – or should have dissipated, if the officers had investigated the matter – before they learned that he was a felon (and, thus, that his possession of the firearm was illegal). He relies on the following facts:

- He pointed his car, a Buick, out to Officer Newton,
- He stated that Reality Records was his business,
- Officer Newton could have used Defendant's keys (or asked Defendant for permission to use his keys) to confirm the two facts stated above,
- Defendant did not appear to be out of breath,
- At 12:18:04, Detective Berryman reported that the Pontiac driver likely had no shoes, but Defendant had shoes, and

6

- If the Pontiac driver's shorts had a green stripe, Detective Berryman had to have seen it – so the fact that he could not confirm the presence of a green stripe meant that Defendant was not the driver of the Pontiac.

The Court does not agree for a variety of reasons. The Court does not agree that Detective Berryman had to have seen the green stripe, particularly since he saw the Pontiac driver from twenty to thirty yards away. The Court does not agree that the fact Defendant owned Reality Records or a Buick meant that he was not the driver of the Pontiac. The fact that sandals were found by the Pontiac does not mean that they were left by the Pontiac's driver.

The Court also does not agree that reasonable suspicion was defeated by the fact that Defendant was not out of breath. The evidence establishes that the distance on foot from 45th and Montgall to 41st and Wabash was approximately half a mile. The Record establishes the time from Detective Berryman's observation of the person running from the Pontiac and Officer Newton's encounter with Defendant was between three and a half and four minutes. Officer Newton directed Defendant to get on his stomach and did not notice whether he was out of breath. (Doc. 46, p. 63.) By the time that Defendant was handcuffed at least two minutes passed – at which point Officer Newton said that Defendant did not appear to be out of breath. (Doc. 46, p. 93.)

For these reasons, and the reasons stated in the Report, the Court concludes that Officer Newton had reasonable suspicion to believe that he was the Pontiac's driver and that suspicion did not dissipate before Officer Newton was learned facts suggesting that Defendant was a felon in possession of a firearm.

### B. Entry Into the Alleyway

Defendant contends that he had an expectation of privacy in the alleyway, so Officer Newton needed a warrant to enter it and look behind the plywood. For the reasons stated in the Report, the Court does not agree that Defendant had an expectation of privacy in the alleyway. There are no barriers blocking entry, and there are no signs indicating that the public should not enter. To the contrary, the alley leads to a door announcing that it leads to "Reality Records," and there is no outward indication that the public cannot use that door to access the business. Further, there was evidence that (1) the door is used by the public to gain entry to the business and (2) Reality Records sometimes operated after midnight. Finally, Defendant's testimony that he regarded the alleyway as private is undermined by the fact that the general public (including particularly customers) could and did use the alleyway. *United States v. Lewis,* 864 F.3d 937, 942 (8th Cir. 2017); *United States v. Long,* 797 F.3d 558, 565 (8th Cir. 2015). The Court concludes that Defendant had no expectation of privacy in the alleyway and a warrant was not required.

The Court also agrees with the Report's alternative analysis: that exigent circumstances justified Officer Newton's return to the alleyway. He believed that a gun was on the ground in the alleyway, which (as stated) could be accessed by the general public. Leaving a firearm in an alleyway in these circumstances constituted a risk to public safety that justified Officer Newton's entry into the alleyway.

### C. The Search of Defendant's House

Defendant contends that the shotgun found in his house should be suppressed because the information in the warrant was derived from unconstitutional conduct. This argument depends upon a ruling favorable to Defendant on the other issues discussed above, and for the reasons previously stated the Court rejects this argument.

Defendant also argues that the affidavit Detective Schwalm prepared to support the warrant application was misleading because it suggests that Defendant was the driver of the Pontiac. The Court disagrees; it outlines the facts involving the search for the Pontiac's driver to provide background and context, but it does not suggest that Defendant was the driver. Relatedly, it does not seek to justify the warrant based on anything related to the Pontiac. This leads to another reason the Court rejects Defendant's argument: the affidavit established probable cause if it had not mentioned the Pontiac, or if it affirmatively stated that Defendant was not the driver. The warrant would still have issued because the affidavit contains probable cause to believe that (1) Defendant had a shotgun in his house and (2) he was a felon. For these reasons, the Court agrees with the Report's analysis.

### III.  CONCLUSION

For these reasons, the Court **OVERRULES** Defendant's objections, (Doc. 59), **ADOPTS** Judge Counts's Report and Recommendation, (Doc. 52), and **DENIES** the Motion to Suppress. (Doc. 26.)

**IT IS SO ORDERED.**

DATE: November 6, 2019

/s/ Beth Phillips  
BETH PHILLIPS, CHIEF JUDGE  
UNITED STATES DISTRICT COURT